IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

ALEX IONITA and LUCICA IONITA ,     )
                                            )
          Plaintiffs,              )     TC-MD 120818C
                                            )
          v.                      )
                                              )
DEPARTMENT OF REVENUE,        )
State of Oregon,                    )
                                            )
          Defendant.           )     **DECISION**

Plaintiffs appeal Defendant's August 22, 2012, Notice of Deficiency Assessment

(Assessment) for 2009 which imposed a tax to pay of $2,707 plus approximately $1,000 in

penalty and interest.  (Ptfs' Compl at 1-2.)  The Assessment stems from Defendant's adjustment

to certain expenses Plaintiffs' claimed on their returns (federal and state) that are associated with

Plaintiffs' operation of an adult foster care home.  Trial in the matter was held April 29, 2013, in

the courtroom of the Oregon Tax Court.  Alex Ionita (Ionita) appeared and testified for Plaintiffs.

Larry Boyd (Boyd), Auditor, Oregon Department of Revenue, appeared and testified on behalf of

Defendant.  Plaintiffs' Exhibit 1[1] and Defendant's Exhibits A through J were admitted at trial.

I.  STATEMENT OF FACTS

A.    *General Introductory Overview*

Ionita testified that Plaintiffs operate a residential adult foster care facility that in 2009

served five adults in a home on McLeay Road Southeast in Salem, Oregon.  (Ptfs' Ex 1 at 4;

Def's Ex C-4.)  Ionita testified that Plaintiffs have been in the elder care service business since

1996, and that for many years they only cared for residents who were fully funded by the state.

---

[1] Plaintiffs did not mark their trial exhibits as required by court rules.  Because Defendant made no objection and there are only six documents submitted, the court labeled Plaintiffs' documents as Exhibit 1, and numbered the individual pages 1-6.

Plaintiffs hire other individuals to care for the residents, and Plaintiffs oversee their work (i.e., they manage the business, including the work of their caregiver-employee).

Ionita testified that he and his wife Lucica live in a small apartment located in a separate building behind the foster care home on the same property. Boyd, who met with Plaintiffs in their home, confirmed that Plaintiffs lived in a separate building.[2]

The parties agree that in 2009 three of the residents receiving care were fully privately funded and that the other two, Emma Bauman (Bauman) and Sharon Wheeler (Wheeler), were "state-funded" residents. The parties further agree, and the evidence shows, that the two state-funded residents paid a portion of the cost of their care out of their own personal funds. (Ptfs' Ex 1 at 4, 6.) Ionita characterizes that private-pay money the two state-funded residents (Bauman and Wheeler) paid Plaintiffs as "room and board." Ionita testified that the single greatest expense not related to client care was for food.

B.    *The State-Funded Resident Program*

As the court understands the testimony and evidence, the state at least partially funds certain adult individuals needing foster care after determining eligibility, level of needed services, and appropriate placement.

For individuals found to be eligible, the state determines the level of service to be provided to the client they are placing, including room and board, and then determines the cost of those services. For both Bauman and Wheeler, the state approved "room and board" amount was $523.70. (Ptfs' Ex 1 at 4, 6.) The "service" amount, on the other hand, differed greatly for the two state-funded clients. Ionita testified Wheeler required considerably more care and the state-

---

[2] That fact is important in determining the expenses properly allocable to the foster care business because typically portions of the home occupied exclusively by the caregivers are considered private, nonbusiness areas and expenses associated with such space are not deductible business expenses. IRC § 280A(a),(c)(4).

approved service cost was more than three times the amount determined for Bauman. (*Id*.) In this case, Bauman's total monthly cost for "service" and "room/board" was $2,498.70. (*Id*. at 4.) Wheeler's total monthly service cost was $6,757.43. (*Id*. at 6.)

Ionita testified that the after the state determines the cost of the approved services, it determines the amount of money the client will pay the provider and the amount the state will pay, based on the client's financial situation. The documentary evidence supports that testimony. (*See e.g.*, Ptfs' Ex 1 at 4, 6.)

C.    *Parties' Agreements Regarding Income and Expenses*

1.    *Income*

The parties agree that Plaintiffs received payments from the State of Oregon in tax year 2009 in the amount of $96,264.92. (Def's Ex A-1.)[3] The parties further agree that those state payments ($96,264.92) are tax exempt under IRC section 131. (*Id*.) On the other hand, payments received directly from the five residents out of their personal finances is taxable gross income reportable on Plaintiffs' federal Schedule C. (*Id*.) The parties agree that in 2009 Plaintiffs received $106,205 of taxable gross income in the form of direct (as opposed to state) payments from the five residents.[4] (*Id*.) Plaintiffs' total income in 2009, both taxable and nontaxable, received for the elderly care services they provided, was $202,470. (*Id*.)

2.    *Expenses*

As for expenses, the parties agree Plaintiffs incurred and correctly reported Schedule C expenses for elderly care services in the amount of $50,345 on line 28, and $27,705 on line 30,

---

[3] Defendant's Exhibit A-1 is essentially a list of ten stipulated facts agreed to by the parties at the court's request, signed by both parties.

[4] Plaintiffs apparently slightly underreported their 2009 Schedule C payments, reporting only $104,246 and neglecting to report an additional $1,959 they received from Bauman that the parties agree needs to be included in gross income. (Def's Ex A-1.) Plaintiffs acknowledge that fact.

and Schedule A expenses of $49,857 on line 29.[5]  (Def's Exs A-1, C-4.)  The vast majority of Plaintiffs' Schedule A expenses are unrelated to their elderly home care service business (e.g., medical and dental, state income taxes, charitable contributions) and are not subject to any percentage limitations associated with that venture.  (*See* Def's Ex C-3.)

Defendant argues Plaintiffs are only allowed to claim 52 percent of their allowable business expenses because that is the percentage of total income that is taxable, the payments from the state being exempt from taxation.  Plaintiffs argue that they should be allowed to deduct all expenses related to their foster care business because they report the "private" payments they receive from all of the residents and the entire home is used for foster care business (Plaintiffs living in a separate dwelling behind that home).  At trial, Ionita requested that the court either allow Plaintiffs to deduct all of the foster care expenses, or exclude from taxable income the private payments received from the two residents who are partially funded by the state. Defendant addressed the former argument at trial, asserting that Plaintiffs would only be entitled to deduct all of their foster care home expenses if all the money they received was from private as opposed to state (and tax exempt) sources.  The alternative argument asserted by Ionita, that Plaintiffs be allowed to exclude the private pay "room and board" payments they receive from the two partially state-funded residents, Bauman and Wheeler, is unsupported by the law, as there is no provision in the code for excluding such income.  A final suggestion proposed by Ionita at that end of the trial was that, if Defendant's percentage method is the legally correct approach, the nontaxable income should be divided by total income.

/ / /

---

[5] The parties' written and signed statement of agreed facts, item 10, states that the Schedule A expenses of $49,987 appear on line 20 (Def's Ex A-1), but line 20 is for casualty and theft losses, and Plaintiffs left that line blank.  (Def's Exs A-1, C-3.)  Their $49,987 total Schedule A itemized deductions appear on line 29.  (Def's Ex C-3.)

## II. ANALYSIS

The issue in this case is the appropriate method used for determining the amount of expenses Plaintiffs can deduct for the operation of their adult foster care home.

The legislature "intended to make Oregon personal income tax law identical to the [IRC] for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law." *Ellison v. Dept. of Rev.*, TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005) (citing ORS 316.007). The legislature adopted, by reference, the federal definition for deductions, including those allowed under Internal Revenue Code (IRC) section 162.[6] IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" IRC section 262 prohibits a deduction for most personal and family expenses.

IRC section 131(a) excludes from gross income "amounts received by a foster care provider * * * as qualified foster care payments." Such payments include those paid by the state or a political subdivision thereof "to the foster care provider for caring for a qualified foster individual in the foster care provider's home[.]" IRC § 131(b)(1). The parties agree, and the court finds, that the payments amounting to $96,264.92 that Plaintiffs received from the State of Oregon for providing foster care, are excluded from their gross income pursuant to IRC section 131.[7]

However, that *income* exclusion affects deductible *expenses*. Under IRC section 265(a)(1) no deduction is allowed for expenses otherwise deductible where such expenses are

---

[6] All references to the Internal Revenue Code (IRC) and accompanying regulations are to the 1986 code, and include updates applicable to 2009.

[7] While Plaintiffs stipulated to that fact in writing, Ionita pressed for a greater income exclusion at trial (asking in the alternative that Plaintiffs be allowed to deduct the private room and board payments they received from their two state-funded residents.

"allocable to one or more classes of income other than interest * * * wholly exempt from the taxes imposed by [Subtitle A.]"[8]  Subtitle A of the IRC pertains to income taxes.  Contrary to Plaintiffs' assertion, IRC section 265 does not allow Plaintiffs to deduct all of their foster care expenses because the "class" of income Plaintiffs receive from the state is "wholly exempt from taxes."  Their foster care expenses must therefore be allocated or apportioned.

The federal regulation tied to IRC section 265 provides:

> "Expenses and amounts otherwise allowable which are directly allocable to any class or classes of exempt income shall be allocated thereto; and expenses and amounts directly allocable to any class or classes of nonexempt income shall be allocated thereto.  If an expense or amount otherwise allowable is indirectly allocable to both a class of nonexempt income and a class of exempt income, a reasonable proportion thereof determined in the light of all the facts and circumstances in each case shall be allocated to each."

Treas Reg § 1.265-1(c) (1960).

That regulation establishes two methods for allocating or apportioning expenses associated with tax-exempt income paid to an adult foster care provider.  *See generally id.*  One method is to track expenses directly related to nonexempt income of qualified residents.  (*Id.*)  The other method is to use the percentage of taxable income divided by total income applied to all allowable expenses.  (*Id.*)

The first method is not appropriate in this case because three of the residents are completely private pay clients and Plaintiffs receive a mix of state and private payments for the other two residents.  And Plaintiffs did not make any effort to track expenses associated with the individual residents.  Treasury Regulation section 1.265(1)(d) (1960) requires an actual tracking of expenses by the taxpayer, submitting an "itemized statement, in detail, showing (i) the amount

---

[8] The relevant portion of IRC section 265(a) provides: "No deduction shall be allowed for – [a]ny amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from taxes imposed by this subtitle[.]"

of each class of exempt income, and (ii) the amount of expenses and amounts otherwise allowable allocated to each such class (the amount allocated by apportionment being shown separately) as required by paragraph (c) of this section." Accordingly, under the regulation, the percentage method must be used.

The regulation provides in part:

> "[i]f an expense or amount otherwise allowable is indirectly allocable to both a class of nonexempt income and a class of exempt income, a reasonable proportion thereof determined in the light of all the facts and circumstances in each case shall be allocated to each."

Treas Reg § 1.265-1(c) (1960).

The court accepts Defendant's method, which is to divide taxable income by total income and apply the ratio or percentage to the allowable expenses. Defendant divided Plaintiffs' taxable payments received directly from all residents in 2009 ($106,205) by Plaintiffs' total income ($202,470). That resulted in a percentage allocation of 52 percent. Boyd defended that method at trial method by noting that $96,265 of the income Plaintiffs receive for providing foster care services (which is 48 percent of their total income) is paid by the State of Oregon and, as such, is not subject to tax under IRC section 131.

Defendant argued that the decision of the United States Tax Court in *Micorescu v. Commissioner of Internal Revenue* (*Micorescu*), 76 TCM (CCH) 796 (1998), supported its percentage allocation approach. At trial, Ionita disagreed, insisting that the *Micorescu* case is factually different because the taxpayers in that case operated a home placement agency as well as a foster home, and that the court ruled the payments the taxpayers received for their foster home placement services were taxable, whereas in this case Plaintiffs do not have a home placement service. Plaintiffs misinterpret the *Micorescu* case. The court in *Micorescu* made essentially two determinations: (1) private payments for adult foster care services were not

exempt from income under IRC section 131; and (2) business expenses were to be allocated proportionally between taxable and nontaxable income. It is the second of those two determinations that is relevant to this case and supports the actions Defendant urges the court to uphold. The court agrees that the percentage allocation approach is appropriate and supported by Treasury Regulation section 1.265-1 (1960) and the *Micorescu* decision.

What remains is the application of that conclusion to the facts of this case. The amount of expenses Plaintiffs are allowed is 52 percent. The parties agree Plaintiffs had a total of $78,050 of allowable Schedule C expenses. The amount of allowable Schedule C expenses is therefore $40,586, which is 52 percent of $78,050.

One of Plaintiffs' arguments is that all five residents pay "room and board," which includes shampoo, toilet paper, rent for the client's room, heat, telephone, cable, electricity, and most importantly, food. Ionita argued at trial that all the money they receive for room and board is subject to tax and they should therefore be allowed to deduct all of the expenses so classified. That position is contrary to the court's decision as set forth above.

Alternatively, Ionita argued that Plaintiffs should at least be able to exclude the room and board payments they receive from the two state-funded residents. That argument is contrary to the tax code, which limits the income exclusion to payments received from the state. *See* IRC § 131(b).

Finally, at trial Ionita argued that if the disputed expenses are to be allocated based on a percentage of income method, Defendant used the wrong percentage. That position came out during Ionita's cross-examination of Defendant's representative, Boyd. Ionita asked Boyd why he was dividing taxable income by total income instead of nontaxable income by total income. Clearly Ionita did not think through the consequences of that approach because his method

would limit Plaintiffs' allowable expenses to 48 percent of the total as opposed to Defendant's 52 percent, the latter being the legally correct and more beneficial approach for Plaintiffs.

### III. CONCLUSION

The court has considered the issue presented and concludes that Plaintiffs are only allowed to deduct 52 percent of the Schedule C business expenses associated with their adult foster care business. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied and Defendant shall adjust its August 22, 2012 Notice of Deficiency Assessment for 2009 as necessary to comport with the court's decision set forth above.

Dated this ____ day of June 2013 .

_____
DAN ROBINSON
MAGISTRATE

***If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.***

***This Decision was signed by Magistrate Dan Robinson on July 21, 2013. The Court filed and entered this Decision on July 21, 2013.***